UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| KENNETH H., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-735-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Kenneth H. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 11).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 9. Plaintiff also filed a reply brief. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on October 9, 2018, alleging disability beginning January 1, 2018 (the disability onset date), due primarily to a variety of physical impairments. Transcript ("Tr.") 15, 241-47, 272. Plaintiff's claim was denied initially on February 11, 2019, and upon reconsideration on May 22, 2019, after which he requested an administrative hearing. Tr. 15.

On June 23, 2020, Administrative Law Judge Brian Lemoine ("the ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Alexander Kyler, an attorney. Tr. 15, 30. Margaret E. Heck, an impartial vocational expert, also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on July 1, 2020, finding Plaintiff not disabled. Tr. 15-25. On May 10, 2021, the Appeals Council denied Plaintiff's request for further review, making the ALJ's July 1, 2020 decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). Tr. 1.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15.

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his July 1, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since October 9, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: lumbar degenerative disc disease with radicular symptoms to the right lower extremity; major depression; a history of opioid and other substance abuse; and a history of borderline intelligence and learning disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)[2] except that he is limited to no more than occasional postural positions to include crouching, crawling, stooping, kneeling, balancing, and climbing of stairs; no climbing ropes, ladders or scaffolds, and mentally limited to the performance of simple routine repetitive tasks, with no more than occasional interaction with others to include coworkers and the general public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on September 26, 1982 and was 36 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

---

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 9, 2018, the date the application was filed (20 CFR 416.920(g)).

Tr. 15-25.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on October 9, 2018, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act. Tr. 25.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ erred in his evaluation of the opinion evidence because he found the consultative examination opinions persuasive but did not include all the limitations from these opinions in the RFC. *See* ECF No. 8-1 at 1, 8-14. Specifically, Plaintiff contends that the ALJ failed to account for the limitation against prolonged sitting assessed by physical consultative examiner Russell Lee, M.D. ("Dr. Lee"), and the limitation in attention/concentration assessed by psychiatric consultative examiner Todd Deneen, Psy.D. ("Dr. Deneen"). *See id*.

The Commissioner argues in response that the RFC was supported substantial evidence and includes all necessary limitations. *See* ECF No. 9-1 at 9-22. First, the Commissioner argues that Dr. Lee's opinion that Plaintiff had prolonged sitting limitations was accommodated with the sedentary RFC finding. *See id*. at 12-13. With respect to the mental RFC, the Commissioner argues that the ALJ's finding that Plaintiff was capable of only simple, routine, tasks and only occasional interaction with others accommodates attention and concentration limitations. *See id*. at 21-24.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record, the Court finds that the ALJ carefully reviewed the relevant medical and non-medical evidence, including treatment records showing largely unremarkable physical and mental status examinations, the opinion evidence, and Plaintiff's activities of daily living and abilities, and there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff retained the RFC to perform a range of simple and sedentary work with the noted limitations. Accordingly, the Court finds no error.

As the ALJ noted, Plaintiff alleges disability due to psychiatric and physical impairments. *See* Tr. 20, 272. He testified that his main problems are the inability to stand, walk, and sit due to back and hip pain, as well as difficulties with memory and concentration. Tr. 38-40, 49. Plaintiff last worked in 2015 as a dishwasher but could not specify why he was fired. Tr. 523. As the ALJ also noted, Plaintiff has a poor work history prior to alleged onset date. Tr. 23.

The record reflects an extensive history of mental health treatment at Chautauqua County Department of Mental Hygiene, primarily related to substance abuse. Tr. 823-938. Plaintiff had used heroin and later abused suboxone. Tr. 842. At the June 2020 hearing, Plaintiff testified that he "had been clean for five years now, and [he was] trying to keep it that way." Tr. 40. Plaintiff has a history of multiple substance-related arrests, with one as recently as 2019 when he and his brother were pulled over and meth discovered in the dashboard. Tr. 823.

On May 14, 2018, Plaintiff followed up at Family Health Medical Services, PLLC ("Family Health"). Tr. 441. He had been off Wellbutrin for a week and needed a refill. Tr. 441.

Plaintiff reported he was in a suboxone program; he had formerly "used 18-20 bundles of heroin a day" [but] had been clean for 2.5 years. *Id*. He also reported "he might have Hep C" but never went back for testing. *Id*. Plaintiff also reported that he occasionally still "poke[d] himself with a needle "out of habit" but did not inject anything. *Id*. It was noted that Plaintiff had a subcutaneous abscess in his upper limb, but he denied using, and he was started on an antibiotic. Tr. 444. On May 18, 2018, the abscess had improved, and there was only slight edema. Tr. 448. Plaintiff was also started on trazodone. *Id*.

On August 25, 2018, Plaintiff presented to the WCA Hospital Emergency Department ("ED"), complaining of right-hand numbness and paresthesia after injecting suboxone into his right wrist. Tr. 338. On examination, he had mottled discoloration and reduced range of motion of the right thumb, index, and middle finger. Tr. 341. Plaintiff was transferred to University of Pittsburgh Medical Center ("UPMC") for further vascular evaluation. Tr. 343, 419. Plaintiff underwent an ultrasound-guided puncture of the right femoral artery and arteriogram of the right ulnar and radial arteries and found to have "very small distal microvascular disease." Tr. 419. No intervention was performed, but it was noted that Plaintiff would "need eventual amputation." *Id*. He was discharged on August 27. *Id*.

On September 14, 2018, Plaintiff presented for a follow-up visit at Family Health following his UPMC hospitalization. Tr. 601. He reported the discoloration was improving, but he still had pain in the tips of his fingers. *Id*. On examination, it was noted that he appeared uncomfortable and unkempt. Tr. 603. Plaintiff's 4th and 5th digits appeared ischemic at distal portions; they were cool and dusky red; and pain with movement was noted. Tr. 603.

On September 28, 2018, Plaintiff was evaluated by Amanda Cimorelli, PA-C ("Ms. Cimorelli"), at UBMD Orthopedics & Sports Medicine ("UBMD Orthopedics"), for possible

amputations due to the necrosis in his right hand and fingers. Tr. 483. Plaintiff reported it was difficult to use his hand due to pain. *Id*. 483. On examination, there was necrosis in the ring and little fingers; he was able to actively flex and extend the PIP (proximal interphalangeal) and DIP (distal interphalangeal) joints, but range of motion was limited with edema, stiffness, and significant hypersensitivity. Tr. 484. Plaintiff was recommended to quit smoking for six weeks before consideration of any surgical intervention. *Id*.

On October 15, 2018, Plaintiff followed up with Ms. Cimorelli at UBMD Orthopedics, reporting worsening sensitivity, continued pain, and numbness/tingling in his right ring and little fingers; he also reported decreased nicotine use. Tr. 504. Examination was unchanged. Tr. 505. Plaintiff was also seen and examined by Robert Ablove, M.D. ("Dr. Ablove"), who concurred with Ms. Cimorelli's evaluation and recommended treatment. Tr. 505-06. Ms. Cimorelli discussed the possibility of undergoing partial amputations of the ring and little finger but recommended first proceeding with conservative measures to allow the body to salvage as much length as possible, to which Plaintiff agreed. Tr. 505. During a follow-up visit on November 12, 2018, Plaintiff reported mildly improved pain and paresthesia; and the blackened area of his little finger had fallen off over the past few days. Tr. 507. Examination was otherwise normal. Tr. 508. Plaintiff was advised to keep his digits moist and warm. *Id*. Dr. Ablove advised Plaintiff that the ring finger would continue to demarcate, and the necrosis would fall off; accordingly, no surgical intervention was recommended. *Id*.

On May 1, 2019, Plaintiff attended a depression follow-up visit at Family Health and reported his depressed feelings were "okay" and "unchanged;" his energy level was "okay;" and he was "aggravated by stress," which was alleviated by medication. Tr. 610. He was taking his medication as prescribed with no side effects. *Id*.

On May 16, 2019, Plaintiff underwent a consultative physical examination with Dr. Lee. Tr. 517-21. Plaintiff reported right hip pain, low back pain, and hand pain. Tr. 517. On examination, his gait was limping and strongly favoring the left. Tr. 518. He was unable to walk on heels and toes, and squat was half. Tr. 518. Dr. Lee opined that Plaintiff was limited in prolonged standing, prolonged sitting, or walking great distances. Tr. 520.

Also on May 16, 2019, Plaintiff underwent a psychiatric consultative examination with Dr. Deneen. Tr. 523-30. He reported a history of depression and bipolar disorder. Tr. 523. On examination, he appeared disheveled, and hygiene was poor. Tr. 524. Affect was dysphoric, and mood was irritable. Tr. 524. Attention and concentration were impaired due to attention deficits. Tr. 524. Recent and remote memory were impaired due to attention deficits, anxiety and possibly pain; cognitive functioning was below average to borderline; and insight was fair. *Id*. Dr. Deneen assessed mild limitations in understanding, remembering, and applying simple directions and instructions; using reason and judgment to make work related decisions; regulating emotions, controlling behavior, and maintaining wellbeing; and maintaining personal hygiene and attire; and moderate limitations in understanding, remembering, and applying complex instructions and directions; and sustaining concentration to perform tasks at a consistent pace. Tr. 525.

As noted above, Plaintiff challenges the ALJ's RFC finding. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the

Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his claim on October 9, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant (which includes: (i) Length of the treatment relationship; (ii) Frequency of examinations; (iii) Purpose of the treatment relationship; (iv) Extent of the treatment relationship; and (v) Examining relationship); (4) Specialization; and (5) Other factors. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear

that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case expressly detailed the basis for finding Plaintiff capable of a range of sedentary work, and substantial evidence supports the ALJ's RFC finding. Tr. 19-23. *See* 20 C.F.R. §§ 404.1527, 416.927. For instance, the ALJ explained that the RFC was "based on [Plaintiff's] treatment for pain, demonstrated limp, generally mild objective evidence and consultative examination opinions [, and] [f]urther limits, as alleged, are not consistent with objective signs, symptoms, or findings in the medical evidence of record." Tr. 22. The ALJ also explained that Plaintiff's "history of back issues, with some limping, has been

taken into consideration in limiting the claimant to sedentary work and some postural restriction." *Id*.

Furthermore, the ALJ's RFC reflects thorough consideration of Plaintiff's hip and back pain, including the results and opinion from consultative examiner Dr. Lee, as well as minimal and benign examination findings. Tr. 19-23. First, the ALJ considered Plaintiff's testimony that he could not work due to an inability to sit, stand, or walk due to hip and back pain, which he alleged caused pain after only five minutes of activity. Tr. 20, 38-44. However, the ALJ reasonably concluded that the medical records did not corroborate the "level of incapacity alleged" but rather, supported Plaintiff's ability to perform "a wide range of sedentary work consistent with the above residual functional capacity." Tr. 20. Moreover, as discussed further below, the ALJ's determination that Plaintiff's symptoms were not as severe as reported was also supported by many treatment notes.

As the ALJ noted, treatment records pertaining to Plaintiff's treatment for hip and back pain was limited to treatment at his primary care facility, documenting largely unremarkable examination findings. Tr. 20-21, 443, 576, 619. For instance, during an annual physical examination in May 2018, Plaintiff complained of chronic low back pain, but he described his general health as "good," and he was working to improve his diet and exercise. Tr. 20, 441-43. The examination was unremarkable, revealing that Plaintiff was comfortable and in no apparent distress; had grossly intact light touch sensation; full and equal strength; and no spinal or extremity abnormalities. Tr. 20, 443. Subsequent treatment records likewise document normal gait (Tr. 615, 749); unremarkable neurological function, including normal strength, sensation, and reflexes (Tr. 448, 728, 751); normal inspection of the spine (Tr. 728, 751); and no evidence of acute distress (Tr. 447, 615, 728, 749, 751).

As the ALJ also observed, although Plaintiff intermittently requested pain medication for his back pain (*see, e.g.*, Tr. 441), the record indicates that Plaintiff's back and hip pain were managed with conservative treatment. Tr. 21-22. *Ridosh v. Berryhill*, No. 16-CV-6466L, 2018 WL 6171713, at *6 (W.D.N.Y. Nov. 26, 2018) ("Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations.") (quoting *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018)). For instance, during Plaintiff's May 2019 annual physical examination, he made no mention of back or hip pain, and the examination was unremarkable. Tr. 611-13. Plaintiff similarly did not report back or hip pain during a November 2019 routine examination. Tr. 21, 617-20.

Although Plaintiff reported low back and hip pain in August 2019, he indicated that the back pain had been present for only two weeks and stated he was "asked by his lawyer to record [it] in [his] medical record for his SSI evaluation." Tr. 614. Despite this, Plaintiff's examination did not reveal any corresponding positive clinical findings. Tr. 614-16. Plaintiff was in no apparent distress; he walked with a normal gait; and he was advised to ice the area of low back pain. As the ALJ also considered, Plaintiff was never referred for, and did not seek, specialty care for his back and hip complaints, and he was adequately maintained on medications prescribed by his primary care providers. Tr. 22. *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) (adjudicator properly considers the treatment modalities utilized, and the effectiveness of treatment to relieve pain and other symptoms); *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (impairment that can be controlled by medication is not disabling).

The ALJ next considered the results of Dr. Lee's May 2019 consultative examination. The opinions of consultative examiners, such as Dr. Lee, can provide substantial evidence for an RFC.

Tr. 21, 517-21. *See Grega v. Saul*, 816 F. App'x 580, 582-83 (2d Cir. 2020) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (The opinion of a consultative examiner may constitute substantial evidence in support of an ALJ's decision)). As the ALJ noted, Dr. Lee observed some positive clinical findings, including that Plaintiff walked with a limp and had slightly decreased sensation in the right leg; however, the ALJ also noted that the remainder of the examination findings were largely normal and unremarkable. Tr. 22, 517-21. For instance, Plaintiff was not in any acute distress, had a normal stance, and, despite his limp, did not use an assistive device. Tr. 518. Plaintiff also did not need help changing for the examination or getting on and off the examination table, and he could rise from a chair without difficulty. *Id*. Plaintiff had full motion of the extremities, no muscle atrophy, and no neurological deficits, including full strength, full and equal deep tendon reflexes, and no sensory deficits. Tr. 519-20.

Based on the foregoing, the ALJ reasonably found Dr. Lee's opinion "persuasive" as to limitations in activities involving prolonged standing, prolonged sitting, and walking great distances because it was "consistent with the internal examination findings and the lack of extensive treatment, with an absence of ongoing indicated neurological deficits or gait abnormality," as well as consistent with the minimal and conservative treatment Plaintiff required for his back and hip pain Tr. 22, 443, 448, 520, 615. *See* 20 C.F.R. § 416.927c(c)(1) (supportability); 20 C.F.R. § 416.927c(c)(2) (consistency). However, the ALJ also reasonably found that Dr. Lee's assessment of limitations associated with Plaintiff's reported history of asthma was not supported based on "the absence of continued breathing issues or asthma exacerbations and by the normal spirometry noted on pulmonary tests," and therefore, said limitations were "not persuasive." Tr. 22, 520.

Plaintiff argues that the RFC does not accommodate Dr. Lee's opinion that Plaintiff had prolonged sitting limitations, and the ALJ erred by not explaining why he "rejected" Dr. Lee's opinion as to prolonged sitting despite finding the opinion persuasive. *See* ECF No. 8-1 at 10-13. Both arguments are meritless.

First, as courts in this Circuit have consistently recognized, moderate limitations in exertional activities, including sitting, are not inconsistent with the ability to perform sedentary work, just as moderate limitations in standing and walking would not preclude the ability to engage in those activities for up to six hours throughout the workday, as required for light work, particularly when interspersed with normal work breaks. *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (moderate limitations supported RFC for light work); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (RFC finding for light work was sufficiently supported by a consultative examiner's opinion assessing only some moderate limitations); *see also Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, *4 (W.D.N.Y. June 30, 2014) (noting that several courts "have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing"); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756 at *13, 14 W.D.N.Y. Feb. 25, 2015) (moderate limitations in sitting, standing and walking not inconsistent with sitting, standing, and walking six hours a day) (collecting cases).

Second, contrary to Plaintiff's argument, the ALJ did not "reject" Dr. Lee's opined limitation in activities involving prolonged standing, prolonged sitting, and walking great distances. *See* ECF No. 8-1 at 10-13. Rather, the ALJ accommodated this limitation with the sedentary RFC finding, the most restrictive exertional category of work. Tr. 19. *See* 20 C.F.R. §§ 404.1520b(c)(3)(iii), 404.1546(c). Moreover, the ALJ was not required to wholesale adopt Dr.

Lee's opinion solely because it was found to be persuasive, as Plaintiff appears to argue. *See Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (ALJ's RFC finding need not include every limitation assessed by a consultative examiner, and ALJ could, instead, exercise discretion in reviewing the record evidence in its totality); *see also Fancher v. Comm'r of Soc. Sec.*, No. 19-cv-158 (KS), 2020 WL 5814359, at *5 (W.D.N.Y. Sept. 30, 2020) ("An ALJ is not required to adopt wholesale the opinion of any one medical source, but is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole."). In any event, as detailed above, the ALJ explained his rationale for finding Plaintiff capable of a range of sedentary work. Tr. 19-23.

The ALJ also adequately considered and found "generally persuasive" the opinions of state agency consultants indicating a range of light work, with occasional postural limits, environmental limits due to asthma history, and moderate psychiatric restriction.  Tr. 23, 101-107, 110-27. The ALJ acknowledged that the consultants' findings were supported by their review of the record and consistent with the mild to moderate examination findings and Plaintiff's conservative treatment history. Tr. 23. However, the ALJ noted that the consultants did not have the benefit of reviewing the entire record, and ultimately found that later-submitted evidence indicated that Plaintiff was more limited than determined by the state agency consultants. *Id.*

Although in many respects the ALJ's RFC reflects greater limitations than the opinions of the state agency consultants and Dr. Lee, these opinions nevertheless provide substantial evidence in support of the ALJ's determination that Plaintiff could at least perform a range of sedentary work. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (affirming where "the ALJ occasionally deviated from consultative examiners' recommendations to decrease Ramsey's RFC based on other evidence in the record"); *see also Lesanti v. Comm'r of Soc. Sec.*,

436 F.Supp.3d 639, 649 (W.D.N.Y 2020) (citing *Baker v. Berryhill*, No. 1:15-cv-00943-MAT,

2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where

the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of

record.").

      While Plaintiff points to a few cherry-picked findings from Dr. Lee's examination to

support his argument that the RFC should have included greater limitations, he ignores the

evidence and analysis that supported the ALJ's RFC finding, including the largely normal

examination findings, Plaintiff's routine and conservative treatment, his reported daily activities,

and the state agency consultants' opinions. Thus, Plaintiff's arguments are simply a request for a

reweighing of the evidence in his favor, which is inappropriate under the substantial evidence

standard of review. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam

is, in reality, attempting to characterize her claim that the ALJ's determination was not supported

by substantial evidence as a legal argument in order to garner a more favorable standard of

review."). The fact that the evidence may have been weighed differently, or that there may be a

reasonable interpretation of the evidence in Plaintiff's favor, is not probative. *Caron v. Colvin*, 600

F. App'x 43, 44 (2d Cir. 2015). Thus, contrary to Plaintiff's suggestion otherwise, the ALJ's RFC

finding for sedentary work was well supported by the record, and the Court finds no error.

      Plaintiff next argues that the ALJ erred because the RFC determination does not mirror the

psychological consultative examiner's opinion. *See* ECF No. 8-1 at13-14. As previously noted,

however, the ALJ was not required to rely on an opinion that mirrored the RFC, as Plaintiff argues.

As the Second Circuit recently reiterated, the RFC does not need to exactly correspond to a

particular medical opinion. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming

where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the

RFC finding did not match any opinion in the record). Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). In this case, the ALJ relied on the available mental health treatment records and evaluations to determine that Plaintiff had no more than moderate mental limitations. Accordingly, the ALJ's finding that Plaintiff was capable of unskilled, simple, routine, and repetitive tasks that required no occasional interaction with others was also based on substantial evidence. Tr. 19-23.

First, the ALJ's RFC finding is consistent with Plaintiff's limited mental health treatment. For instance, the ALJ considered that, Plaintiff's mental health treatment was primarily limited to medication prescribed by his primary care providers; and treatment records, including Plaintiff's statements to his providers, mental status examinations, and provider assessments indicate that his mental impairments remained mild and stable. Tr. 20-21, 441, 52, 610, 617, 823.  In May 2019, Plaintiff reported to Dr, Deneen that he experienced episodic depression that was relieved with medications prescribed by his primary care providers and was not in therapy or counseling. Tr. 523. On May 1, 2019, Plaintiff told his primary care provider that his "depressed feelings [were] okay, depressed feelings remained unchanged and energy level [was] okay." Tr. 610. On November 1, 2019, Plaintiff reported that his mood and energy levels were both "okay;" symptoms improved with medication; and his medication caused no side effects.  Tr. 617. Furthermore, there is no evidence that Plaintiff was ever referred for formal psychiatric treatment, counseling, or therapy. Tr. 20, 441, 619, 825.

Furthermore, as the ALJ discussed, Plaintiff's mental status examinations were unremarkable during the relevant period. Tr. 20-21. During an annual physical in May 2018, Plaintiff was "pleasant and comfortable" and alert with normal mood and affect, articulate and

fluent speech, and full orientation. Tr. 20, 443, 447-48. As the ALJ also observed, subsequent examinations continued to show stable and unremarkable examination findings, including appropriate appearance, normal motor activity, and a cooperative and appropriate attitude. Tr. 21, 611, 619. Plaintiff also exhibited normal mood and affect; clear and appropriate speech; normal thought processes; and intact associative thinking. Tr. 505, 611, 615, 619. The ALJ also noted that, despite reported short-term memory issues, "none were reflected by treatment visits," and Plaintiff's thought processes were "without dementia, overt illogical thinking, or compulsion and his associative thinking was intact." Tr. 21, 614-16. Although, the record indicates that Plaintiff was referred to a neurologist for exploration of reported memory issues, it does not appear that he followed through with the referral. Tr. 619. Accordingly, the ALJ appropriately concluded that the mental status examinations did not support a finding that Plaintiff had marked limitations caused by mental impairments. Tr. 21.

The ALJ also considered that Plaintiff's reported daily activities were inconsistent with his allegations of disabling symptoms and limitations. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)). As the ALJ observed, Plaintiff's testimony and reports demonstrated that he was capable of cooking, shopping, caring for himself, and visiting his daughter; and he maintained good relationships with his family. Tr. 20, 518, 523, 525, 851. *See Poupore*, 566 F.3d at 307 (claimant's abilities to watch television,

read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

Plaintiff was also able to take medical transportation; manage his finances; recount his health history; complete healthcare forms for treatment; and attend his medical appointments without issue. Tr. 18, 20, 517-18, 523-25, 574, 582, 601, 610, 614, 617, 842-51. *See Kenneth W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0825 (WBC), 2020 WL 7385251, at *6 (W.D.N.Y. Dec. 16, 2020) (citing *Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) ("substantial evidence of routine activities" properly found to be inconsistent with claims of total disability)); *Cheatham v. Comm'r of Soc. Sec.*, 2018 WL 5809937, at *10 (W.D.N.Y. Nov. 6, 2018) (finding that the ALJ's determination that plaintiff could maintain attention and concentration for simple, routine, repetitive tasks and interact to some degree with others is supported by plaintiff's activities, which included using public transportation, preparing meals, cleaning, shopping and playing basketball).

The ALJ also considered that Plaintiff required only conservative care for his mental health issues; he was not referred for formal psychiatric treatment; and he reported improvements with just medications. Tr. 20, 22, 523. Furthermore, the record indicates that Plaintiff attributed his inability to work to his physical impairments, not his mental impairments. Tr. 523, 525, 834. *See Clinton v. Saul*, No. 19-CV-6114F, 2020 WL 5365996, at *7 (W.D.N.Y. Sept. 8, 2020) (ALJ properly considered that plaintiff did not endorse mental health concerns, and examinations were unremarkable).

Based on the foregoing evidence, including treatments records showing normal examination findings and few complaints, as well as Plaintiff's reported activities and conservative treatment, the ALJ's finding that Plaintiff was limited to simple, reduced-contact work as outlined in the RFC was supported by substantial evidence, and Plaintiff's allegation that he was further

limited than the ALJ assessed is not supported by the evidence. *See Kirkland v. Colvin*, 15-cv-6002, 2016 WL 850909, *12 (W.D.N.Y. Mar. 4, 2016) (ALJ's specific limitations were supported by substantial evidence, including daily activities, treatment history, and consultative examiner's evaluation, even though such limitations did not precisely correspond to any medical opinion); *see also Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (ALJ properly relied on the absence of findings in the record corroborating plaintiff's allegations).

The ALJ also relied on the May 2019 opinion from psychological consultative examiner Dr. Deneen to support the mental RFC finding. Tr. 21-22, 523-25. Dr. Deneen opined that Plaintiff had no limitations interacting with supervisors, coworkers, and the public; sustaining a ordinary routine and regular attendance at work and remaining aware of normal hazards and taking appropriate precautions; and only mild limitations understanding, remembering, and applying simple directions and instructions, using reason and judgment to make work related decisions, regulating emotions, controlling behavior, and maintaining well-being, personal hygiene, and appropriate attire. Tr. 525. Dr. Deneen further opined that Plaintiff had moderate limitations in understanding, remembering, and applying complex instructions and directions, and in sustaining concentration to perform tasks at a consistent pace. *Id*. Dr. Deneen ultimately concluded that Plaintiff's impairments did not appear to be "significant enough to interfere with [his] ability to function on a daily basis." *Id*.

The ALJ found Dr. Deneen's opinion "persuasive," explaining that the opinion was supported by Dr. Deneen's own examination findings, which showed mild and moderate deficits, at most. Tr. 21. For instance, as the ALJ acknowledged, Dr. Deneen observed that Plaintiff had impaired attention, concentration, and memory; irritable mood; and dysphoric affect; but otherwise, he had a cooperative demeanor, appropriate speech, social skills, eye contact, and

appearance, goal-directed thought processes, and fair insight and judgment. Tr. 21, 524-25. The ALJ also found the opinion was consistent with the record generally, including the mental status examinations and treatment records discussed above, "which show no overwhelming mental deficits, with no psychosis or mania and no significant ongoing deficit in concentration, or memory that would significantly impede [Plaintiff's] daily functioning." Tr. 21-22. Thus, Dr. Deneen's opinion was fully consistent with the RFC limiting Plaintiff to no more than simple work.

Plaintiff complains that the ALJ did not explain how the RFC accommodated "an attention/concentration limitation in Dr. Deneen's opinion" and accuses the ALJ of not explaining why he did not "include. . . [a] concentration limitation in the RFC." *See* ECF No. 8-1 at 8-9, 11-12. However, the ALJ's finding that Plaintiff was capable of only simple, routine, tasks and only occasional interaction with others, reasonably accommodates any attention and concentration limitations. Tr. 19. *See, e.g.*, *Arthur M. v. Saul*, No. 6:20-CV-06174-MJR, 2021 WL 2309884, at *4 (W.D.N.Y. June 7, 2021) (finding that an RFC for simple, routine, tasks accommodated opinion assessing moderate limitations in concentration, persistence, and pace and responding to changes in a work setting) (citing *Johnson v. Berryhill*, 17-CV-00684, 2018 WL 4539622 (WDNY Sept. 21, 2018); *Ana H. v. Comm'r of Soc. Sec.*, 19-CV-432, 2020 WL 6875252 (WDNY Nov. 23, 2020) (RFC for simple, routine, repetitive tasks properly accounted for moderate limitation in responding appropriately to usual work situations and changes in a routine setting). Accordingly, Plaintiff's argument is unconvincing.

Additionally, the ALJ adequately considered and found "generally persuasive" the prior administrative findings from the state agency psychological consultants. Tr. 23, 105, 117-18. While the ALJ found the opinions to be supported by the consultants' respective reviews of the record and consistent with Plaintiff's benign mental status examination findings and conservative

treatment, the ALJ considered that the consultants did not have the benefit of reviewing later-submitted evidence. Tr. 23. However, the consultants' findings nevertheless provided additional support for the ALJ's determination that Plaintiff could at least perform a range of simple work.

Contrary to Plaintiff's arguments, the ALJ's rationale for the mental RFC finding is clear. The ALJ discussed evidence pertaining to Plaintiff's attention and concentration abilities, including acknowledging that Dr. Deneen observed attention and concentration limitations, but the ALJ also reasonably considered that the record otherwise consistently showed that Plaintiff was able to attend and maintain focus and had normal cognition and thought processes. Tr. 18, 21-22, 524-25, 611, 619. As noted above, the ALJ also explained that Plaintiff received no formal mental health treatment, only receiving medication management by his primary care provider, and he reported stable and improved functioning with medications. Tr. 20, 441, 523, 610, 612, 617, 619. Thus, the ALJ reasonably concluded that Plaintiff's unremarkable examination findings coupled with the lack of formal mental health treatment did not "reflect marked restrictions," and his mental conditions would not preclude him from performing "a range of unskilled work that did not involve more than occasional interaction with others to include coworkers and the general public." Tr. 21-22. Accordingly, the Court finds no error. *See Michael R. v. Comm'r of Soc. Sec.*, No. 19-CV-6836-MJR, 2021 WL 346365, at *8 (W.D.N.Y. Feb. 2, 2021) ("Further, the ALJ clearly considered evidence relating to plaintiff's ability to maintain concentration, persistence, or pace, noting that his statements about his ability to complete tasks and pay attention were inconsistent, but the consultative examination documented some problems in this domain. The formulated RFC therefore addresses and accounts for plaintiff's mental limitations.") (internal citations omitted).

Plaintiff again cites to a few cherry-picked findings from Dr. Deneen's' examination to support his argument that the RFC should have included greater limitations (*see* ECF No. 8-1 at

8-13), but Plaintiff ignores that the ALJ explicitly considered these findings and fails to cite any objective evidence the ALJ overlooked. Tr. 21, 524-25. *See Dyana G. o/b/o J.A.G. v. Comm'r of Soc. Sec.*, No. 19-CV-805-FPG, 2021 WL 465249, at *3 (W.D.N.Y. Feb. 9, 2021) ("the existence of such evidence does not mean that the ALJ erroneously evaluated [these opinions], especially where, as here, there was ample other evidence supporting the ALJ's conclusion. It is the ALJ's job to resolve conflicting record evidence and the Court must defer to that resolution.") (internal citations omitted); *see also Valentin v. Comm'r of Soc. Sec.*, 820 F. App'x 71, 713 (2d Cir. 2020) ("Valentin does not identify any evidence supporting a more limited RFC.").

Moreover. as previously noted, Plaintiff bears the ultimate burden of proving that he was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the

threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

<u>**CONCLUSION**</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE